## Griffin v. Griffin

*Thomas I. Guerin,* for plaintiff.

GORDON, JR., P. J., December 8, 1949.—This is an action in divorce on the ground of indignities to the person, and the case is before us on exceptions to the master's report. The master found that plaintiff has made out a case entitling her to a divorce on that ground (a finding with which we agree), but has recommended that the divorce be refused on the jurisdictional ground that plaintiff did not have a bona fide residence in the Commonwealth for the full year immediately preceding the filing of the complaint required by The Divorce Law of May 2, 1929, P. L. 1237, sec. 16. The only question raised by the exceptions to the master's report is, therefore, whether his conclusion in this respect is justified by the evidence. In order to determine this question, a brief review of the pertinent facts is necessary, since our inability to accept his recommendation that the divorce be refused is based upon the conclusions he draws from those facts.

When the parties were married on April 4, 1945, they were both on active service in the Marine Corps, and their legal residences were, respectively, 3147 South 22nd Street, Philadelphia, Pa., and 513 East Beetree Street, Nashville, Ga. Because of the demands of their service in the armed forces they did not immediately take up a common and permanent legal residence, but each retained the residences they had before marriage, living together only at numerous

temporary residences, which did not interfere with their military service. This situation continued until April 1947, after defendant's discharge from the Marine Corps, when they established their first common marital domicile at the home of plaintiff's parents in Philadelphia. Thereafter, they lived together at various residences in that city until the end of October 1947, when plaintiff left defendant because of his mistreatment of her, and went to live with her parents, defendant taking up a separate residence at the YMCA in this city. The mistreatment which caused plaintiff to leave her husband constituted a part of the indignities for which the divorce is being sought.

Being thus separated, and each having a separate residence, defendant, in the middle of December 1947, moved to his parents' home at 513 East Beetree Street, Nashville, Ga., and plaintiff remained at her residence in the home of her parents in this city.

On July 10, 1948, plaintiff yielded to defendant's entreaties that she go to his home in Georgia and live with him for a time, in order to decide ultimately whether he had so far reformed in his conduct and attitude toward her as to render a possible permanent reconciliation and resumption of a common marital domicile. The master has found as a fact that, in going to Georgia, plaintiff did not intend to give up her Pennsylvania domicile, but on the contrary that she intended only to make a temporary visit for the purpose just stated, and to retain her existing domicile in Philadelphia until the result of her visit with her husband and his family should determine whether she should permanently return to, and live with, him at a common marital domicile to be satisfactory to both. It was with this understanding that plaintiff stayed with defendant at his parents' home until December 26, 1948, when, recognizing that a permanent resumption of marital life together was impossible, plaintiff

returned to her residence in this city. The complaint in divorce was filed by plaintiff shortly after her return to her home here.

The foregoing facts establish, in our judgment, that plaintiff's legal residence was not broken by her visit to Georgia during the latter half of 1948, but that it continued, uninterrupted from October 1947, the date on which she finally left her husband and returned to the home she had established with her parents, to the date of impetrating this suit, January 25, 1949, a period of more than one year.

Residence within the meaning of the divorce statute means a permanent home with domiciliary intent: Huston v. Huston, 130 Pa. Superior Ct. 501, 508. Formerly the status of a married woman prevented her from doing many acts involving legal consequences to herself that she can do today. The law viewed her as incapable of acquiring a legal domicile other than that of her husband, even though she might actually be living apart from him because of his wrongful acts or desertion of her. His domicile remained hers. This rule, the application of which in modern times would work many obviously unjust hardships on a wife, was based on the theoretical unity of husband and wife, and the status of the man as the head of the family. With the gradual emancipation of the married woman, most of her common-law disabilities disappeared, and the law, as revealed by the decisions of the courts and legislative enactments, increasingly recognized the existence today of an exception to the ancient general rule just stated; and we think it is now settled law that a wife has a right to leave the common domicile and establish a separate domicile of her own, whenever she is compelled by the misconduct of her husband to leave him. In such cases the existence of her separate domicile is tested exactly as that of any other person,

namely, by her taking up of an actual residence in a particular place, with the intention of making that place her permanent home.

Having acquired a legal residence in Philadelphia in 1947, the question then arises whether plaintiff necessarily lost it, under all the circumstances, when she was in Georgia during the latter part of 1948. We think not. Once a bona fide permanent residence is acquired, a mere temporary absence from it does not operate to impair, or change, the residence already established: Heath v. Heath, 44 Pa. Superior Ct. 118, 123. This is so, since a domicile once acquired persists, and is presumed to continue, until it is shown to have been abandoned without any animus revertendi: Commonwealth ex rel Cronhardt v. Cronhardt, 135 Pa. Superior Ct. 117. Whether the intent to return exists in a given instance is a question of fact, and depends upon all the circumstances of each case. Here, there is not the slightest evidence to indicate that plaintiff intended, when she went to, or during her temporary visit in, Georgia, to make that place her permanent home, or, to put it in other words, to abandon her home in Philadelphia. In the absence of such evidence, it is presumed that she retained her Pennsylvania domicile. The mere fact that she lived with her husband in Georgia for upward of five months is not sufficient, in itself, to overcome her uncontradicted testimony that, at the time she left Philadelphia, she did not intend to give up her Pennsylvania domicile. Had she not been forced by her husband's mistreatment to leave him, and take up a separate home of her own, there would be force in the master's suggestion that her domiciliary intent, when she was with her husband in Georgia, must be taken to have been that of her husband, on the principle that the domicile of a wife is that of her husband. This would doubtless be true in cases where a wife has never established a separate domicile. But

where, as here, she had the legal right to, and did in 1947, fix her permanent residence here, with her parents, her own intention as to retaining or changing her domicile becomes the controlling test of its location.

Barning v. Barning, 46 Pa. Superior Ct. 291, and Evangelist v. Evangelist, 60 D. & C. 417, relied on by the master, are not in point in the instant case. There was no affirmative proof that the wives in those cases intended to keep their separate domiciles when they returned to live with their husbands. In the absence of contrary evidence, therefore, their actions in returning admitted of no other conclusion than that they intended to adopt the domiciles of their respective spouses as their own. In addition, Evangelist v. Evangelist was based on desertion, which is terminated by the resumption of cohabitation that destroyed the wife's legal right to a divorce, and hence to adopt a separate domicile of her own.

For the foregoing reasons, we are of opinion that the conclusion of the master that the court is without jurisdiction to entertain the case because of the inadequate residence of plaintiff before filing the complaint cannot be accepted. In all other respects, however, the master's report is approved.

Accordingly, we now make the following order in the case:

### Order

Now, December 8, 1949, plaintiff's exceptions are sustained; the court finds that it has jurisdiction of the case; the master's report in all other respects is approved, and the findings and conclusions of the master are adopted as the findings and conclusions of the court. Let final rule issue.